**Dominic F. BARAGONA, et al., Plaintiffs,**

v.

**KUWAIT & GULF LINK TRANSPORT COMPANY, et al., Defendants.**

**No. 1:05–cv–1267–WSD.**

United States District Court, N.D. Georgia, Atlanta Division.

May 8, 2009.

---

**3.** These figures were discounted to present value. The figures also included allowances for fringe benefits.

David Gregory Michell (Balch & Bingham LLP), Edward MacAllister (Perles Law Firm, P.C.), James Dartlin Meadows (Balch & Bingham), John Frank Salter, Jr. (The Barnes law Group LLC), Roy E. Barnes (The Barnes Law Group LLC), Steven Couch (Hollis & Wright, P.C., Steven R. Perles) (Perles Law Firm, P.C.), for Plaintiff.

Clifford Zatz (Crowell & Moring), David Hammond (Crowell & Moring), Patricia Freshwater (Crowell & Moring), Curtis J. Romig (Bryan Cave Powell Goldstein), Taymond Joseph Burby, IV (Bryan Cave Powell Goldstein), for Defendant.

## OPINION AND ORDER

WILLIAM S. DUFFEY, JR., District Judge.

### I. INTRODUCTION

This opinion and order addresses for a second time whether the Court has jurisdiction over an action for damages brought in this district by the parents of Lt. Col. Dominic F. Baragona. Lt. Col. Baragona

was an active duty member of the United States Army who was riding in an Army vehicle in Iraq when it was struck by truck operated by Defendant Kuwait & Gulf Link Transport Company (KGL). KGL is a Kuwaiti company. Lt. Col. Baragona died as a result of injuries he suffered in the accident.

Lt. Col. Baragona's family sued KGL and the driver of the truck that collided with his vehicle. The driver was an Egyptian national working for KGL in Iraq. From the beginning, the Court has been concerned with whether it had personal jurisdiction over the Defendants. The Court required the Plaintiffs to meet strict service of process requirements to perfect service on KGL in Kuwait. Because of its concern about the exercise of personal jurisdiction over a Kuwaiti company for an action based on an accident in Iraq, the Court required the Plaintiffs to present evidence to support the scope and nature of KGL's contacts with the United States, and with Georgia in particular. Plaintiffs originally presented this evidence at a hearing on January 30, 2007. Plaintiffs' evidence of KGL's contacts with Georgia was presented without the benefit of input or counter-evidence from KGL. Based on the information then presented, the Court determined that Plaintiffs had made the required *prima facie* showing of jurisdiction existed over KGL. KGL failed to answer the complaint or otherwise participate in litigation, and, upon entry of default against KGL and following a hearing pursuant to Federal Rule of Civil Procedure 54, the Court entered default judgment against KGL in the amount of $4,907,048.

On February 15, 2008, KGL elected to make an appearance in this action by filing a motion to set aside the judgment entered against it on the grounds that KGL did not have sufficient contacts with this district or the United States generally for the Court

to exercise personal jurisdiction over it. At a hearing on December 5, 2008, the parties were given the opportunity, after conducting discovery on the jurisdictional question, to present evidence and argue whether this Court could exercise personal jurisdiction over KGL. The evidence presented at the hearing provided the Court with a more complete and accurate description of KGL's contacts with this jurisdiction. Importantly, during the hearing the jurisdictional expert retained by the Plaintiffs, and upon whom the Court previously relied when it found a *prima facie* showing of jurisdiction, conceded the absence of KGL's contacts with this district. The adversary system having now been fully engaged and the Court now having a complete and substantial picture of KGL's contacts with Georgia and this district in particular, the Court necessarily concludes that there is no basis for personal jurisdiction over KGL. The Court is compelled to vacate the judgment entered against KGL and dismiss this action for lack of jurisdiction.

## II. BACKGROUND

On May 19, 2003, the United States Army HMMWV in which Lt. Col. Baragona was riding collided with a truck owned by defendant KGL and driven by defendant Serour. Lt. Col. Baragona died of injuries sustained in the accident.

On May 12, 2005, Plaintiffs filed this action, in their personal capacities and as representatives of Lt. Col. Baragona's estate, against Serour and KGL. KGL is incorporated under Kuwaiti law and has its principal place of business in Kuwait. Defendant Serour is an Egyptian citizen. Plaintiffs assert that the Court has diversity jurisdiction over this action, 28 U.S.C. § 1332(a), and personal jurisdiction over the Defendants pursuant to Georgia's long-arm statute, O.C.G.A. § 9–10–91(1).

Plaintiffs assert claims for negligence and wrongful death.

Pursuant to the Court's February 10, 2006 Order [4], Plaintiffs served KGL pursuant to international mail courier.[1] On March 15, 2006, KGL refused delivery of the Complaint and summons.[2] On July 28, 2006, Plaintiffs moved for entry of default against KGL for KGL's failure to appear and failure to accept service [13]. Fed. R.Civ.P. 55(a). On August 21, 2006, the Clerk of the Court entered default against KGL.

On October 26, 2006, Plaintiffs moved for a second entry of default against KGL [15]. Plaintiffs had learned, with the assistance of the Procurement Fraud Branch of the Department of the Army and others in the United States government, that on July 11, 2006, KGL had accepted service from the Kuwaiti Ministry of Justice pursuant to the Hague Convention. The Clerk of Court entered a second default against KGL on January 10, 2007[17].[3]

On January 30, 2007, the Court held a hearing to determine whether it has personal jurisdiction over KGL under the Georgia long-arm statute and the Due Process Clause of the Fourteenth Amendment. Although given notice of the hearing, KGL elected not to appear. Plaintiffs submitted a memorandum addressing whether the Court had personal jurisdiction over KGL [22]. Attached to it was the declaration of retired Army Lieutenant Colonel Paul Winston Schwartz, a former United States Army contracting officer who Plaintiffs identified as a contracting expert. Lt. Col. Schwartz explained the contracting office for the Third United States Army was headquartered at Fort McPherson, Atlanta, Georgia. He explained that the Third Army is the Army Component of the United States Central Command, the joint forces command responsible for the Middle East region. Also attached to the Plaintiffs' memorandum was a list of what appeared initially to be over one hundred contracts entered into between KGL and the U.S. Army Central Cmd–Kuwait. See [22–1, 2]. Lt. Col. Schwartz explained in his declaration that each of those contracts would have been administered by the Principal Assistant Responsible for Contracting (PARC) stationed at Fort McPherson. He further explained that a Contracting Officer stationed at Fort McPherson or elsewhere would have been responsible for day-to-day administration of the contracts.

1. Plaintiffs initially attempted to serve KGL through the Kuwaiti Ministry of Justice, pursuant to the requirements of the Hague Convention of 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which the United States ratified on June 15, 1965 and to which Kuwait acceded on May 2, 2002. Plaintiffs moved for leave to serve via international courier after the Kuwaiti government failed to timely comply with its service obligations under the Hague Convention [3].

2. Plaintiffs filed an identical action in the United States District Court for the Northern District of Alabama and attempted service in the same manner. See Baragona, et al. v. Kuwait Gulf Link Transport Co., et al., No. 05–cv–1049–CLS (N.D.Ala. May 19, 2005). On March 14, 2006, Saeed Esmail Dashti, KGL's Chairman and Managing Director, signed for and opened the Complaint in the Alabama action, which is nearly identical to the Complaint in this action. Mr. Dashti read the Complaint and returned it to the courier. KGL refused delivery of the Complaint in this action on the following day.

3. Defendant Serour has not appeared in this action. Serour was in his 60s when the accident occurred and sustained serious injuries in the crash. He was treated for his injuries at a Coalition hospital in Basra, Iraq before returning to Kuwait. Serour subsequently quit his job with KGL and returned to Egypt. Plaintiffs have not located Serour and have not served him. See Baragona AR 15–6 Investigation Report Exh. 22, at Exh. 1 to KGL's Post–Hearing Reply Br. [106].

On April 9, 2007, the Court determined: Plaintiffs submitted an affidavit setting forth a number of contacts between Defendants and the state of Georgia, including contracts formed between Defendants and government entities located at Fort McPherson, Georgia. Plaintiffs have shown a *prima facie* case that the Court has personal jurisdiction over the Defendants in this case. April 9, 2007 Order [24] at 2; *see also Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir.1988), *cert. denied*, 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990). On November 5, 2007, 691 F.Supp.2d 1346, 2007 WL 4125734 (N.D.Ga.2007), the Court entered default judgment against KGL in the amount of $4,907,048 [37].

On February 15, 2008, KGL for the first time appeared in this action by filing its motion to vacate the judgment entered against it on November 5, 2007. KGL claims the judgment is void because the Court lacked personal jurisdiction over it [40].

On June 18, 2008, the Court entered an Order evaluating KGL's motion to vacate [57]. The Court determined there was a material conflict between the evidence submitted by the Plaintiffs and by KGL regarding KGL's contacts with the State of Georgia. KGL proffered evidence that all contract formation between it and agencies of the United States occurred outside the United States and that KGL did not have any other contacts with entities in the United States. KGL argued that the

Army's decision to administer its contracts in Georgia was without KGL's knowledge or consent. The Court ordered limited discovery directed at the jurisdictional issue.

On December 5, 2008, the Court held a seven-hour evidentiary hearing at which KGL presented testimony and documentary evidence in support of its motion to vacate. The Court ordered limited post-hearing briefing. That briefing is now complete, and this matter is ripe for decision.[4]

## III. GOVERNING LAW

### A. *Motion to Vacate*

 Federal Rule of Civil Procedure 60(b)(4) permits a defendant to move for relief from a final judgment on the grounds that the judgment is void. Fed. R.Civ.P. 60(b)(4). A final judgment is void against any defendant over which the Court lacks personal jurisdiction. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 924 (11th Cir.2007). Rule 60(b)(4) allows a litigant—even one who does not initially appear—to collaterally attack a judgment on the ground that it is void due to lack of personal jurisdiction. *Id.* Unlike motions pursuant to other subsections of Rule 60(b), Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not. *Id.* at 925 (internal quotation marks omitted).

4. Plaintiffs have filed two additional motions requiring brief consideration. On February 4, 2009, Plaintiffs filed a motion requesting that the Court solicit a statement of interest from the United States Department of Defense [108]. Plaintiffs argue the Defense Department may wish to make use of 28 U.S.C. § 517, which permits the Attorney General to send an Executive Branch official to attend to the interests of the United States in court proceedings. On March 4, 2009, Plaintiffs filed a motion seeking referral of this case to nonbinding mediation [111] because of a proposed bill in the United States Senate which would, if it became law, prospectively confer jurisdiction on this Court for causes of action against foreign contractors such as KGL. The Court considers both motions after addressing the threshold jurisdictional issue.

**1358**

The plaintiff normally bears the burden to show personal jurisdiction over a defendant. The burden of proof for a Rule 60(b)(4) motion generally rests with the defendant. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1298–99 (11th Cir. 2003). The Eleventh Circuit has stated, however, that the plaintiff continues to bear the ultimate burden of establishing that personal jurisdiction is present in a case such as this where the defendant initially defaults and subsequently moves pursuant to Rule 60(b)(4) to challenge the Court's jurisdiction. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir.2009) (It goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present.). Accordingly, the Court must consider whether Plaintiffs' jurisdictional allegations are controverted by KGL's declarations, keeping in mind that even where the evidence submitted by the parties conflicts, the Court still must construe all reasonable inferences in favor of the Plaintiffs. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990).

### B. *Personal Jurisdiction*

The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Unlike subject matter jurisdiction, which is limited by Article III of the Constitution and, for the lower federal courts, by statutory grants of jurisdiction, [t]he requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. *Id.*

Personal jurisdiction generally entails a two-step inquiry. *Sloss*, 488 F.3d at 925. In the matter before it, the Court must first determine whether the exercise of jurisdiction is appropriate under Georgia's long-arm statute. *Id.* Second, the Court must examine whether exercising jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have minimum contacts with the forum state, *id.*, and that the exercise of jurisdiction not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In the context of a motion to dismiss for lack of personal jurisdiction where—such as here—defendant KGL failed to appear and contest personal jurisdiction, Plaintiffs bore the burden of establishing a *prima facie* case of personal jurisdiction over KGL. *Morris*, 843 F.2d at 492; *Delong*, 840 F.2d at 845. A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict. The district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits or deposition testimony. *Morris*, 843 F.2d at 492 (internal citations omitted).

On the basis of the Plaintiffs' briefing and the affidavit of Lt. Col. Schwartz, the Court previously determined that Plaintiffs had shown a *prima facie* case of personal jurisdiction over KGL. April 9, 2007 Order [24] at 2. The Court necessarily determined that Georgia's long-arm statute, O.C.G.A. § 9–10–91(1), " 'grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State,' "

*id.* (quoting *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank,* 279 Ga. 672, 620 S.E.2d 352, 355 (2005)), and that Plaintiffs had shown a *prima facie* case that the Georgia long-arm statute permitted the exercise of jurisdiction over KGL. KGL does not contest the Court's determination that the exercise of jurisdiction over it is permitted by the Georgia long-arm statute. KGL's Mot. to Vacate [40] at 5; KGL's Post–Hrg Br. [104].

▇▇▇▇ KGL challenges whether the Court's exercise of jurisdiction over it violates the Due Process Clause of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). When a controversy is related to or arises out of the defendant's specific contacts with a forum, a State is said to be exercising specific jurisdiction over the defendant. *Id.* at 414 n. 8, 104 S.Ct. 1868. When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant. *Id.* at 414 n. 9, 104 S.Ct. 1868. Because Plaintiffs in this case do not allege that this action arises out of or is related to KGL's alleged contacts with the State of Georgia, the question here is whether the Court has general jurisdiction over KGL.

▇▇▇▇ To exercise general jurisdiction over a person, the Supreme Court requires that person to have minimum contacts with the State seeking to exercise jurisdiction over the Defendant. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868. Minimum contacts is a requirement that necessitates a showing of continuous and systematic general business contacts between the defendant and the forum state. *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1292 (11th Cir.2000), *cert. denied,* 534 U.S. 827, 122 S.Ct. 68, 151 L.Ed.2d 34 (2001); *accord Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868. Whether a defendant's general business contacts are sufficiently continuous and systematic to justify the exercise of general jurisdiction must be evaluated on a case-by-case basis.

▇▇▇▇ The Supreme Court has offered limited guidance on what contacts are and are not sufficient to justify an exercise of general jurisdiction. For example, sending a corporate officer to a State for contract negotiations, accepting checks drawn on a State's banks, purchasing goods from the State, and sending personnel to the State for training purposes do not together constitute sufficient continuous and systematic general contacts to support an exercise of jurisdiction. *Helicopteros,* 466 U.S. at 416–17, 104 S.Ct. 1868. The Supreme Court has reasoned that intentional contacts with a forum State are what are required to be sufficient to justify the exercise of jurisdiction in that particular State. That is, unilateral activity by a plaintiff or a third-party will not suffice to establish continuous and systematic general contacts between the defendant and the forum state. *Id.* at 417, 104 S.Ct. 1868.[5] In each case the Court must determine on the record in that case whether the con-

5. "Common sense and everyday experience suggest that, absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer. Such unilateral activity of another party of a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros,* 466 U.S. at 416–17, 104 S.Ct. 1868.

tacts are sufficient for general jurisdiction to be exercised over a defendant. *See, e.g., Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 279–80 (4th Cir.2009) (four telephone conversations and twenty-four emails are not alone sufficient to satisfy minimum contacts with the Commonwealth of Virginia).

■ If the plaintiff shows that the defendant has sufficient minimum contacts, the Court must next consider whether the assertion of personal jurisdiction over the defendant would "comport with 'traditional notions of fair play and substantial justice.'" *Morris,* 843 F.2d at 492 (quoting *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154). In evaluating whether fair play and substantial justice permit the exercise of jurisdiction, the Court should consider the burden on the defendant in defending the lawsuit, the forum State's interest in adjudicating the dispute, the plaintiff's interest in convenient and effective relief, the interstate judicial system's interest in efficient resolution of controversies, and the shared interest of the States in furthering fundamental substantive social policies. *Madara,* 916 F.2d at 1517 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ Finally, because personal jurisdiction represents an individual's constitutional right, it can, like other such rights, be waived. *Insurance Corp. of Ireland,* 456 U.S. at 703, 102 S.Ct. 2099. An individual may voluntarily subject himself to the jurisdiction of a court by appearance or may contract in advance to submit to the jurisdiction of a given court. *Id.* at 703–04, 102 S.Ct. 2099. An individual's defense for lack of personal jurisdiction may be waived if not asserted in a timely motion or in a responsive pleading. Fed.R.Civ.P. 12(h); *id.* at 704, 102 S.Ct. 2099; *Oldfield,* 558 F.3d at 1218 n. 21.

■ A party does not, however, waive its defense for lack of personal juris-

diction simply by failing to appear and thus defaulting, even if the party received proper service of the action. While it is preferred that a party engage the litigation process by making an appearance for the limited purpose of challenging the court's jurisdiction, [a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding. By submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction: That decision will be res judicata on that issue in any further proceedings. *Insurance Corp. of Ireland,* 456 U.S. at 706, 102 S.Ct. 2099 (citations omitted); *accord Sloss,* 488 F.3d at 924. The reason for this is grounded in the constitutional limitations of personal jurisdiction. A court either has personal jurisdiction over a party, or it does not. If not, the courts default judgment is void and unenforceable. *Sloss,* 488 F.3d at 924.

## IV. DISCUSSION

This case comes before the Court after years of pretrial proceedings in which Plaintiffs have tried repeatedly and in varying ways to cause KGL to appear and answer for allegedly causing the death of Lt. Col. Baragona in Iraq. Not until a substantial default judgment was entered against it, and after official inquiries into its conduct by the Procurement Fraud Branch of the United States Army, did KGL finally appear to defend itself, nearly three years into the litigation. The Court considers KGLs conduct to be regrettable, if not defiant, especially given its multiyear relationship with various arms of the United States Government, from which KGL profited substantially. The Court is constrained, however, to exercise its jurisdiction only as far as the Due Process

Clause permits. Because the evidence before the Court shows KGL did not have sufficient minimum contacts with Georgia, the Court cannot exercise personal jurisdiction over KGL in this district, and the judgment against KGL is required to be vacated.

### A. *KGL's Motion to Vacate*

### 1. Development of Factual Record at the December 2008 Evidentiary Hearing

At the evidentiary hearing on December 5, 2008, KGL appeared and presented testimonial and documentary evidence conflicting significantly with the evidence originally submitted by the Plaintiffs in support of default judgment. The Court evaluates whether it has jurisdiction over KGL on the basis of this now developed factual record.

KGL introduced into evidence sixteen separate contracts with the United States Government with effective award dates between 1995 and 2004. *See* KGL Post-Hearing Br. [104], Appendix (KGL App.) at 132–34; KGL Hrg. Exh. 1. Each contract's cover page shows the government organization issuing the contract, the office to which KGL was required to submit invoices, and the office from which payment to KGL would be made. KGL App. at 135–69; KGL Hrg. Exhs. 2–17. Every contract introduced into evidence was issued by a United States Government organization outside the United States. Most contracts were issued by the United States Army Central Command—Kuwait, at Camp Doha, Kuwait. The contracts occasionally were issued by ARCENT–KU DIRECTORATE OF CONTRACTING, which testimony at the evidentiary hearing established was an abbreviation for the Army Central Command—Kuwait. KGL App. at 54. One contract was issued by the Naval Regional Contracting Center Naples, Detachment Bahrain. KGL App. at 142.

The sixteen contracts required KGL to submit its invoices to United States Government finance offices in Kuwait. Payment to KGL also was made from Government finance offices in Kuwait, often from Camp Doha and occasionally from other locations within Kuwait. In all, the contract documents submitted into evidence do not refer at any point to Fort McPherson or even to Georgia generally. In fact, none of the writings suggests the contracts had any activity occurring in or directed to any location in the United States. This evidence directly contradicts evidence presented to the Court by the Plaintiffs earlier in this action.

KGL presented the testimony of Stany Sequeira. Sequeira was the Operations Manager for KGL from 1982 to 2006. Sequeira Testimony, Hrg. Tr. at 12, KGL App. at 3.[6] From 1982 to 2006, Sequeira's role as operations manager at KGL included carrying out KGL's contracts with United States Government entities. *Id.*[7] KGL does not have any employees, property, offices or assets in the United States. *Id.* at 36–37.

---

**6.** Sequeira currently is a commercial advisor to the chairman of the board of KGL Transportation Company ("KGLTC"). *Id.* at 3–4. KGLTC is a separate corporate entity from the defendant in this case, KGL. *Id.* at 6. KGL and KGLTC are headquartered in different cities in Kuwait. *Id.* at 33. The two companies do not share corporate officers, board members, or executives. *Id.* at 34. KGLTC was formed in May 2005, and Sequeira was transferred from KGL to KGLTC in 2006. *Id.* at 7.

**7.** When KGLTC was formed, KGL still had approximately one month remaining before completion on one of its United States Army contracts. KGL App. at 9. KGLTC assumed that contract obligation for approximately one month from May to June 2005. *Id.* at 9–10.

Sequeira testified that all contracts between KGL and the Army were paid by the Army Central Command Finance Support Unit, which is located at Camp Doha in Kuwait. KGL App. at 56. Contact numbers for ARCENT–KU were listed as Kuwaiti phone numbers. *Id.* at 54. When KGL was paid on its Army contracts, the Army Central Command Finance Support Unit in Kuwait remitted payment drawn on a Kuwaiti bank in Kuwaiti dollars to KGL's local bank account in Kuwait. *Id.* at 62–63. Sequeira would sometimes pick up payments, tendered in the form of checks, from Camp Doha in Kuwait. *Id.* at 62.

Sequeira testified that he occasionally met the contracting officers assigned to KGL's Army contracts at Camp Doha. *Id.* at 60. Sequeira testified that in his administration of KGL's United States Army contracts he did not ever speak to anyone in Georgia or contact anyone in Georgia. *Id.* at 61. Sequeira frequently communicated with the Army's Installation Transportation Officer (ITO), the Army official who decided where equipment and services from KGL would be delivered. *Id.* at 57. Sequeira spoke with the ITO almost daily. Each time, this communication was made between Sequeira and an individual in Kuwait. *Id.* at 64. To the best of Sequeira's knowledge, bids for KGL's Army contracts originated in Kuwait and were filled in Kuwait. *Id.* at 65. The contracts themselves were signed at Camp Doha. *Id.*

Sequeira never met with or spoke to individuals in Georgia during his administration of KGL's contracts. KGL App. at 60–61. He never received correspondence from anyone in Georgia. *Id.* at 64–65.

Before these proceedings, Sequeira testified that he had never heard of a PARC stationed at Fort McPherson. *Id.* at 60–61.

KGL also presented the testimony of Ahmed Afify, currently a member of Global United Insurance Company and formerly an attorney for KGL. KGL App. at 12–13. Afify worked as an attorney for KGL from 1988 to 2007. Afify also conducted the document search, employee interviews, and compiled employee questionnaires relied upon by KGL at the December 2008 hearing. *Id.* at 15, 20–21.[8]

Afify led the effort to survey all KGL and KGLTC employees in Kuwait. The employees were given a paper survey requiring them to inform KGL of any contacts, communications, contracts, visits (with companies or individuals) [the employee had] made with the United States whether through physical attendance, correspondence by email, fax, telephone, or any other communication method, during [the employee's] work with KGL or any of its subsidiaries from the period beginning January 1998 until January 2008. KGL App. at 176. None of the surveys identified any contacts by KGL employees with persons in or travel to the United States. *Id.* at 18. Afify also coordinated with the human resources departments in KGL and KGLTC to review the travel records of employees. Afify did not find any evidence of anyone from KGL or KGLTC ever visiting Georgia. *Id.* at 24.[9] Afify confirmed these survey responses by cross-checking the responses with financial department records. *Id.* at 19–20. Afify's searches of documents from KGL and

---

**8.** Plaintiffs argue these employee surveys are not credible or complete because Afify did not survey former employees of KGL or KGLTC. Pls.' Post–Hrg. Br. at 14.

**9.** KGL tendered at the December 2008 hearing a summary of the survey responses re-

ceived by Afify. The Court did not admit this survey into evidence, however, because KGL failed to comply with the requirements of Fed.R.Evid. 1006. The Court admitted testimony describing the survey results.

KGLTC located no documents or communications referring to a PARC or to Fort McPherson, Georgia. *Id.* at 27.

Afify also testified to the corporate organization of KGL and KGLTC. KGL spun off its operational activities to corporate subsidiaries, including KGLTC. KGL App. at 32–33. KGL and KGLTC have separate officers, directors, executives, employees, and offices in different cities in Kuwait. *Id.* at 33–34. Both companies observe full corporate formalities such as board meetings and shareholders meetings. *Id.* at 35.

KGL next presented the testimony of Philip Sordian, the chief operating officer and vice chairman of KGLTC. KGL App. at 74. KGLTC was not formed until May 18, 2005. *Id.* at 76.[10] KGLTC is a minority shareholder in KGL Transportation Company, L.L.C., a Delaware limited liability company formed in February 2007. *Id.* at 79–80. KGL Transportation Company, L.L.C. was formed in part to help KGLTC recover monies from the United States Army. *Id.* Sordian testified KGL Transportation Company, L.L.C. has no assets or employees and offers no services. *Id.* at 79. From June 2005 to September 2008, KGLTC did not do any contracting business with the United States Government. *Id.* at 80. Sordian took several trips to the United States in his capacity as COO of KGLTC, to Philadelphia, Charleston, South Carolina, Washington, D.C., and New Jersey. *Id.* at 81–82. None of Sordian's trips was to Georgia. *Id.*[11]

Lt. Col. Schwartz also testified at the December 5, 2008 hearing. Lt. Col. Schwartz explained that his knowledge of the Third Army's relationship with Fort McPherson came from his three-year duty tour at Fort McPherson in the 1980s and from general Internet research he undertook to prepare his testimony to the Court.[12] KGL App. at 91–92. He also explained that the relationship between the Third Army, United States Central Command, and forward operating areas was highly complex and in flux during the time period relevant to this case. *Id.* at 82.

Lt. Col. Schwartz testified that the commander of the Army's component to the United States Central Command moved its headquarters from Fort McPherson, Georgia to Kuwait on November 11, 2001. *Id.* at 93. The headquarters of the United States Central Command itself is located at Fort MacDill, Florida. *Id.* Lt. Col. Schwartz also testified that the Army could, in its discretion, change the geographic location of Major Commands or operational units, such as the Third Army, to different bases within the United States or in forward locations. *Id.* at 94–99. Contractors working for the United States Army would not be solicited for approval of a move. *Id.* at 99. ARCENT continues to be headquartered in Kuwait. *Id.* at 100.

Lt. Col. Schwartz testified that in approximately October 2002, the PARC for the Third Army became the ARCENT Southwest Asia Contracting Command. *Id.* at 102, 108. Lt. Col. Schwartz testified

---

**10.** This action was filed on May 12, 2005, six days before KGLTC was formed.

**11.** Plaintiffs argue Mr. Sordian's testimony is not credible. Pls.' Post–Hrg. Br. at 11–14. Plaintiffs argue Mr. Sordian's recollection of never meeting anyone from the United States Government or military is not credible because he testified to attending meetings in Charleston, Washington, D.C., and New Jer-

sey at which United States government personnel would have been present. Plaintiffs have not presented any evidence or discredited Sordian's testimony that none of his meetings in the United States occurred in Georgia.

**12.** The limited basis of Lt. Col. Schwartz's testimony was not previously made clear to the Court.

that he was in error when he stated in his earlier sworn declaration filed with the Court that the PARC for the Third Army was located at all times in Fort McPherson, Georgia. *Id.*

Lt. Col. Schwartz testified he believed it would be appropriate to require sophisticated contractors of the Third Army to be sued in Georgia. KGL App. at 124–28. Lt. Col. Schwartz based his conclusion on the notion that a sophisticated contractor would have to play by [the] foreign power's rules. *Id.* at 127. Under Lt. Col. Schwartz's hypothesis, personal jurisdiction would be appropriate over a major, sophisticated United States Government contractor in any jurisdiction in which the Army, in its discretion, chose to move the headquarters of the Army contracting entity. *Id.* at 129–30. In Col. Schwartz's opinion, the place where contracts were executed or administered or where a contractor received payment would not be important to the analysis of where the contractor could be subject to personal jurisdiction. *Id.* at 115.

Finally, Plaintiffs presented the deposition testimony of Benjamin Fluhart. Mr. Fluhart was employed by KGLTC from March 2007 to June 2008 and lived and worked in the United States during that time. Pls.' App. at 66. Fluhart was employed to obtain payment on invoices owed to KGLTC by the United States Army. *Id.* at 67. Fluhart testified that he made contact on behalf of KGLTC with various people and entities in the Unites States Government, including the Army. *Id.* at 69. Fluhart conducted business in the Washington, D.C. area and kept a post office box on behalf of KGLTC in Maryland. *Id.* at 83. Plaintiffs do not identify any of Fluhart's activities that occurred in or were directed toward Georgia.

### 2. Analysis

 The Court's initial concern in this matter was whether the record contained sufficient information for the Court to make a constitutionally permissible ruling on its jurisdiction over KGL. In evaluating this jurisdictional question, the Court was impeded by the refusal of KGL to participate in the adversarial system and now realizes the testimony presented by Lt. Col. Schwartz was based on scant investigation, personal experiences that were not coextensive with the relevant time period in this case, and beliefs about the constitutional exercise of personal jurisdiction that are in conflict with applicable legal precedent and logic. The December 2008 hearing and the parties' additional submissions expanded the factual record available to the Court and represent a clear and reasonable basis for the Court to evaluate the issue before it. With this new information, it is clear KGL does not have sufficient contacts with this forum to establish jurisdiction, and the judgment entered by the Court against KGL is void and must be vacated.

Evidence presented at the December 5, 2008, hearing establishes, almost without doubt, that KGL's contacts with the United States Army were exclusively military contracts for transportation services in Kuwait. The evidence shows that all contracts were negotiated and executed in Kuwait, that all services were performed in Kuwait, and that all payment was made from Kuwait to KGL's accounts in Kuwait. The evidence further showed that the Third Army's headquarters, the only tangible connection alleged by Plaintiffs to connect KGL to Georgia, had in fact been moved to Kuwait well before Lt. Col. Baragona was killed. Lt. Col. Schwartz's declaration upon which the Court found a *prima facie* case of personal jurisdiction relied heavily on the existence of a PARC stationed at Fort McPherson. It now appears that assertion was wrong; the

PARC responsible for KGL's contracts was reassigned as the ARCENT Southwest Asia Contracting Command and operated in Kuwait.[13] KGL's officers and employees testified that during their performance of KGL's contract with the United States Army they never communicated with or had any relation to anyone in Georgia. To the extent they ever communicated with United States government officials or military personnel, those individuals were stationed in Kuwait.

Plaintiffs persist in arguing in support of jurisdiction in this district. Plaintiffs first attempt to discredit the testimony and evidence offered by KGL. Plaintiffs primarily allege that KGL's witnesses are not credible. For instance, Plaintiffs allege Mr. Afify's testimony is not credible because it relies on survey data that failed to survey former employees or on record searches that did not search materials over five years old (the document retention requirement under Kuwaiti law). Plaintiffs also allege Mr. Sordian's testimony is inherently incredible because it is not believable that he could have attended military contractor events in the United States and not interacted with United States Government officials.

The Court finds the testimony presented by KGL to be sufficiently credible. Plaintiffs have not alleged or shown any facts to discredit KGL's witnesses. The testimony of Ben Fluhart establishes that KGLTC had, at most, very limited contacts with individuals in the United States; it does not discredit KGL's assertion that it had no contact with individuals in the United States or the assertion that KGLTC's foreign employees had no contact from May 2005 to September 2008 with individuals in the United States. KGL's evidence also is internally consistent and credibly supports KGL's general assertion that it does not have any contacts with Georgia. Plaintiffs have not been able to identify anything or anyone connecting KGL to Georgia.

Plaintiffs next attempt to connect KGLTC to the United States. This is a flawed argument. KGLTC is not a defendant in this case, and the evidence in the record shows that KGL and KGLTC are wholly separate corporate entities. Even if the Court could connect KGL and KGLTC for the purposes of establishing jurisdiction, all of KGLTC's alleged activities in the United States were in Washington, D.C., Philadelphia, New Jersey, and Charleston, South Carolina—not Georgia.

Plaintiffs make conflicting arguments that either KGL should be generally subject to jurisdiction in the United States because of its military contracts with the United States Government or, alternatively, that this is a specific jurisdiction case because the cause of action relates to KGL's military contracts with the United States. The latter argument is discredited by the factual record. The evidence in the

---

**13.** The Court previously relied on Lt. Col. Schwartz's interpretation of a spreadsheet purporting to show over one hundred contracts between KGL and the "U.S. Army Central Cmd—Kuwait." [22–1, 2]. Closer examination of that spreadsheet reveals most entries are in fact separate entries for the performance of one contract, as identified by a unique Contract Number. The Court cross-referenced this spreadsheet with evidence presented by KGL at the December 2008 hearing. The Court confirmed that, based on the coversheets for each actual contract, all of the distinct contracts (as known by Contract Number) entered into between KGL and the U.S. Army, except for one, were negotiated, entered into, paid, and administered in Kuwait. *See* KGL Hrg. Exh. 1 at Tabs E, F, H, I, J, K, L, M, & N. The only contract for which KGL did not present evidence confirming its exclusive relationship to Kuwait is Contract Number W912D104C0004 valued at $241,071.00. Plaintiffs have not presented any evidence connecting Contract Number W912D104C0004 to Georgia.

record shows that KGL's driver was acting on a contract for the World Food Programme when the truck he was driving struck and killed Lt. Col. Baragona. It is undisputed that the KGL driver was not acting on a United States military contract at the time of the accident. There simply is no support for Plaintiffs' notion that this is a specific jurisdiction case.

Plaintiff's overarching argument is that KGL should be subject to jurisdiction in the United States in any State in which the United States Army chooses to administer its contracts. Lt. Col. Schwartz's theory of jurisdiction is founded on this flawed hypothesis: a sophisticated foreign entity that contracts with the United States Government should be subject to jurisdiction in whatever State the United States Government unilaterally chooses to administer the contract. This theory would have two practical consequences: a foreign contractor would be subject to suit in the United States even if it never communicated with individuals or entities in the United States and even if its employees never set foot on United States soil; and the location of that suit could be effectively determined by the United States Government based upon where the Government chooses to administer the contracts.

 The Court is not aware of any other court that has addressed this issue. On first impression, the Court concludes the due process clause does not permit exercising jurisdiction over a United States military contractor in the State where the military chooses to administer

the contract, independent of any other contacts between the contractor and the State. A contrary ruling would offend the fundamental principles of jurisdiction embedded in the Fourteenth Amendment's due process clause. The foundation of jurisdiction is whether a defendant purposely avails himself of the benefits (and burdens) of the forum State. The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Due process requires an even higher standard when the cause of action does not relate to the defendants connections with the forum. Minimum contacts for general jurisdiction requires a showing of continuous and systematic general business contacts between the defendant and the forum state. *Consol. Dev. Corp.,* 216 F.3d at 1292; *accord Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868.

 KGL simply does not have enough contacts with the State of Georgia to subject itself to suit here. In fact, the expanded record now shows that KGL's contacts with Georgia are nonexistent or *de minimis* at best.[14] The Constitution

---

14. The parties originally conceded that jurisdiction over KGL was proper under the Georgia long-arm statute. Having now determined that KGL has essentially no contact with Georgia, the Court also concludes that Georgia's long-arm statute is not satisfied. O.C.G.A. § 9–10–91(1) "authorizes a Georgia court to exercise personal jurisdiction over a nonresident who '[t]ransacts any business within' Georgia." *Innovative Clinical,* 620

S.E.2d at 355. This subsection grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State .... to the maximum extent permitted by procedural due process. *Id.* (internal quotation marks omitted). The evidence now establishes that KGL does not transact any business in Georgia and that exercising jurisdic-

does not permit the Court to hold KGL liable in this State where there is no evidence that KGL purposely availed itself of anything or has any continuous or systematic contacts with the State. Plaintiffs' argument, and specifically the argument made by Lt. Col. Schwartz at the December 2008 hearing, asks the Court to entirely disregard KGL's actual contacts with Georgia and rule instead based on KGL's general contacts with the United States Government. This argument effectively ignores the Due Process Clause. It would be unprecedented to subject a company to suit and judgment in a forum in which it has not consented to its burdens or experienced its benefits, based on the opposing party's unilateral decision to move its contracting and administrative facilities there. It also would effectively establish universal jurisdiction in the United States for any government contractor, includes foreign entities, which have no other contact or relationship with the United States.[15]

■■■ Plaintiffs' final argument is that KGL has waived its ability to contest jurisdiction. Plaintiffs argue that given the unique facts of KGL's conduct in this case the Court should find that KGL is estopped from moving to vacate the judgment. In *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897 (11th Cir.1990), the Eleventh Circuit held that a third-party defendant waived his ability to assert the defense of insufficiency of process by waiting until collateral proceedings to raise the defense. The summons served on the defendant inadvertently omitted the number of days the defendant had to respond to the complaint, a technical service error under Fed.R.Civ.P. 4(a)(1). *Id.* at 899. The defendant indisputably had notice of the action. After the district court entered default judgment, the defendant moved to vacate the judgment because the Court did not acquire jurisdiction over him through insufficient process. *Id.* at 899–900. The Eleventh Circuit held, that if a summons is in substantial compliance with Rule 4(b), F.R. Civ. P., and a defendant has not been prejudiced by the defect in the summons, the defendant must raise his or her Rule 12(b)(4), F.R. Civ. P., defense by motion or in a responsive pleading, or risk having waived that defense if he or she waits until final default judgment has been entered. *Id.* at 900.

Plaintiffs extrapolate from *Sanderford* that a defendant waives its personal jurisdiction defense by failing to raise it before default judgment is entered. This is not the law. A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding. *Insurance Corp. of Ireland*, 456 U.S. at 706, 102 S.Ct. 2099 (citations omitted). There is no question in this case that KGL had notice of this action and that Plaintiffs went to great efforts to serve it. KGL instead argues that it lacks sufficient minimum contacts with the forum State. Rule 60(b)(4) permits a defendant who is properly served and who has notice of an action to default, risk default judgment, and move subsequently to void the judgment for lack of jurisdiction. *E.g., Oldfield*, 558 F.3d at

---

tion over KGL would offend constitutional due process. Georgia's long-arm jurisdiction does not extend to KGL.

**15.** This case is about general jurisdiction over a foreign United States military contractor. The Court takes no position on any other situation, such as a specific jurisdiction situation where the alleged injury occurs during the performance of contractual duties. The Court also takes no position on the validity or scope of waiver provisions which might be found in the contracts themselves or in the Federal Acquisition Regulation. The evidence establishes that KGL did not consent to jurisdiction in Georgia, and that is as far as the Court's inquiry extends.

1217 (vacating district court's order denying properly-served defendant's motion to set aside default judgment for lack of personal jurisdiction); *Sloss*, 488 F.3d 922 (properly served defendant moved pursuant to Rule 60(b)(4) to set aside default judgment for lack of personal jurisdiction).

▇ Plaintiffs also assert KGL waived its personal jurisdiction defense by entering into contracts containing third-party insurance provisions. FAR 55–228.8. Plaintiffs do not specify how, if at all, the FAR operates to modify the constitutional standards of jurisdiction. Regardless of whether KGL should in fact be liable for its injuries to Lt. Col. Baragona, the Court's inquiry is limited to whether it can constitutionally exercise jurisdiction over KGL. The Court has determined it cannot, and the FAR provisions for third-party insurance do not change the relevant constitutional standards.

▇ Plaintiffs finally argue that if the Court finds sufficient minimum contacts do not exist they will amend the complaint to utilized Federal Rule 4(k)(2). Rule 4(k)(2) provides:

**(2)** *Federal Claim Outside State–Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

**(A)** the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

**(B)** exercising jurisdiction is consistent with the United States Constitution and laws.

Fed.R.Civ.P. 4(k)(2). Rule 4(k)(2) thus sanctions personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the long-arm statute of any particular state. *S.E.C. v. Carrillo*, 115 F.3d 1540, 1543–44 (11th Cir.1997) (quotations omitted). Rule 4(k)(2) establishes nationwide jurisdiction for foreign defendants for claims arising under federal law. The claims in this case are for wrongful death and negligence, neither of which arises under federal law. Plaintiffs confusingly assert that the federal cause of action is a third party beneficiary lawsuit on the FAR provision 52.228–8 against KGL. Pls. Post–Hrg. Br. at 20 n. 7. Plaintiffs do not allege how they are foreseeable third-party benefits of the FAR, how KGL violated the FAR by not obtaining third-party insurance, or how Plaintiffs possess private standing to raise an alleged violation of the FAR. This case does not arise under federal law, and Fed. R.Civ.P. 4(k)(2) does not apply.

**B.** *Plaintiffs Motion for an Order Soliciting a Statement of Interest from the Department of Defense*

Plaintiffs also move the Court to request from the Department of Defense a statement of interest regarding the applicability of certain provisions of the Federal Acquisition Regulations (FAR).[16] Pursuant to 28 U.S.C. § 517, [t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States

---

**16.** The FAR regulates contracting practices between the United States Government and private entities. "The Federal Acquisition Regulations System, which is issued under the joint authorities of the Administrator of General Services, the Secretary of Defense, and the Administrator for the National Aeronautics and Space Administration, consists of the Federal Acquisition Regulation (FAR), which is the primary document, and agency acquisition regulations that implement or supplement the FAR.'" *DeFrank v. Army Fleet Support, L.L.C.*, No. 1:07–cv–775, 2009 WL 737113, at *5 n. 15 (M.D.Ala. Mar. 20, 2009) (quoting 48 C.F.R. § 1.101).

to attend to the interests of the United States. 28 U.S.C. § 517.

Plaintiffs assert that section 52.228–8 of the FAR effectively waives a government contractors ability to assert a personal jurisdiction defense in cases asserting third-party liability. Section 52.228–8 provides:

Liability and Insurance—Leased Motor Vehicles (May 1999)

(a) The Government shall be responsible for loss of or damage to—

(1) Leased vehicles, except for—

(i) Normal wear and tear; and

(ii) Loss or damage caused by the negligence of the Contractor, its agents, or employees; and

(2) Property of third persons, or the injury or death of third persons, if the Government is liable for such loss, damage, injury, or death under the Federal Tort Claims Act (28 U.S.C. 2671–2680).

(b) The Contractor shall be liable for, and shall indemnify and hold harmless the Government against, all actions or claims for loss of or damage to property or the injury or death of persons, resulting from the fault, negligence, or wrongful act or omission of the Contractor, its agents, or employees.

(c) The Contractor shall provide and maintain insurance covering its liabilities under paragraph (b) of this clause, in amounts of at least $200,000 per person and $500,000 per occurrence for death or bodily injury and $20,000 per occurrence for property damage or loss.

(d) Before commencing work under this contract, the Contractor shall notify the Contracting Officer in writing that the required insurance has been obtained. The policies evidencing required insurance shall contain an endorsement to the effect that any cancellation or any material change adversely affecting the interests of the Government shall not be effective (1) for such period as the laws of the State in which this contract is to be performed prescribe or (2) until 30 days after written notice to the Contracting Officer, whichever period is longer. The policies shall exclude any claim by the insurer for subrogation against the Government by reason of any payment under the policies.

(e) The contract price shall not include any costs for insurance or contingency to cover losses, damage, injury, or death for which the Government is responsible under paragraph (a) of this clause.

Plaintiffs argue the requirement in subsection (c) that a government contractor obtain liability insurance for third-party claims asserted against it effectively waives a contractor's ability to assert a personal jurisdiction defense. Plaintiffs assert this is a first impression issue of nationwide significance. They assert this provision of the FAR would be rendered a nullity if government contractors could avoid suit by asserting the absence of personal jurisdiction. KGL argues participation by the Defense Department is not appropriate or warranted in this case.

 The Court determines a solicitation to the Defense Department is not appropriate in this case. What Plaintiffs request is practically untenable. 28 U.S.C. § 517 does not provide a mechanism through which a court can solicit the participation of the United States. The section merely authorizes the Attorney General to send the Solicitor General or another officer of the United States to attend to the nation's interest in court proceedings. The section does not require or even provide for a court to request the participation of the United States in the litigation here. In this case, which has been pending for nearly four years and about which the Department of Defense in unquestionably aware, the United States has chosen not to appear. The Court is not inclined to disturb that choice.

### C. *Plaintiffs' Motion for Referral of the Case to Mediation*

On March 4, 2009, Plaintiffs requested the Court to refer this case, which has been pending for nearly four years, to non-binding mediation. KGL opposes mediation.

Local Rule 16.7 permits the Court to refer any civil case to a non-binding alternative dispute resolution process, such as mediation. The rule provides:

A judge may in his or her discretion refer any civil case to a non-binding ADR process, e.g. early neutral evaluation, mediation, or non-binding arbitration. Upon the consent of the parties, the judge may refer any civil case to binding arbitration, binding summary jury trial or bench trial, or other binding ADR process.

The timing of the referral to a binding or non-binding ADR process under this section is within the discretion of the referring judge.

LR 16.7B(1), NDGa. Whether to refer a case to mediation is within the Court's discretion.

Plaintiffs suggest non-binding mediation would be appropriate at this stage of the litigation because both parties are at far too great a risk posture to prudently continue litigation. Plaintiffs argue they are at risk because the Court's decision on the pending motion to vacate may adversely affect them. Plaintiffs argue KGL is at risk because legislation currently pending in the United States Senate may effectively terminate KGL's contracting activities with the United States Government because of KGL's conduct in this litigation. Plaintiffs assert mediation would serve to find common ground among the parties and avoid the further expenditure of litiga-tion costs and other future consequences of continued litigation.

KGL opposes mediation. It argues the matter is finally ripe for the Court to issue a final ruling on personal jurisdiction. It also informs the Court that the Army's Procurement Fraud Branch informed KGL on February 6, 2009, that it does not intend to initiate suspension and debarment proceedings against the company. KGL further argues that mediation could be appropriate at the appellate level after this Court rules on the pending motion to vacate. *See* Fed. R.App. P. 33; 11th Cir. R. 33–1(c).

On March 4, 2009, United States Senator Claire McCaskill (Mo.) introduced the Lieutenant Colonel Dominic Rocky Baragona Justice for American Heroes Harmed by Contractors Act. S. 526, 111th Cong. § 1 (2009) (as referred to S. Comm. on Homeland Sec. & Gov't Affairs). The bill is cosponsored by Sen. Robert P. Casey, Jr. (Pa.) and Sen. Mel Martinez (Fla.). The bill would require the Director of the Office of Management and Budget to amend the FAR to include a mandatory waiver of personal jurisdiction in the federal courts of the United States for United States government contractors. The bill also would provide for the availability of suspension or debarment proceedings against a contractor who refuses or fails to appear before a United States federal court in a matter brought against the contractor in connection with the contractor's performance of its contract with the United States government.

 Plaintiffs assert this bill exposes KGL to liability in this case. The Court disagrees. The bill has not come to a vote in the Senate Committee and has not been voted on by either chamber of Congress.[17]

---

17. Even if it were to pass, several provisions of the bill provide that it does not apply retroactively. The bill could not apply to KGL's conduct in this case, and any future harm to KGL from suspension or debarment is purely hypothetical.

Mediation would not serve a practical purpose, especially where KGL has indicated it does not consent to mediation. By design, mediation has prospects for success only where the parties to it are willing participants.

The Court has entered judgment against KGL in this case. The only question remaining is whether that judgment is enforceable against KGL. If the Court lacks personal jurisdiction over KGL, the judgment is by definition void. As Plaintiffs point out, the Court has repeatedly implored the parties to find a sensible resolution to this dispute. The parties have failed to do this, and the better course now is for the Court to decide the jurisdictional question.

## V. CONCLUSION

The Court holds that exercising jurisdiction over KGL would offend the constitutional requirements of sufficient minimum contacts with the State of Georgia and traditional notions of fair play and substantial justice. The expanded evidence in this case establishes almost no connection between KGL and Georgia. In the absence of jurisdiction over KGL, the judgment entered against it is void and must be vacated.

The Court's holding is not meant to approve of KGL's conduct in this litigation. The Court is rightly bound by constitutional standards of due process and cannot enforce a judgment against a party over which it lacks jurisdiction. But, as the Court communicated to the parties in the December 2008 hearing, KGL's conduct in this case was indignant and callous. KGL derived substantial revenue from its contracts with the United States Army. KGL and other Kuwaitis received unquantifiable benefits from the protection the United States Armed Forces have provided to Kuwait for over fifteen years. For KGL to then turn a blind eye to the death caused by a KGL employee of a United States service member, who was on duty protecting the region at the time of the incident, is an affront to the solemn sacrifices service members such as Lt. Col. Baragona honorably provided to Iraq and the citizens of other countries in the Middle East region. KGL took this callousness even further by causing Plaintiffs to expend nearly four years and significant expense in merely getting the question of jurisdiction before the Court. The Court implored KGL to work with Plaintiffs to fashion a just resolution in this case, but this request was ignored. Despite these concerns, the Court cannot constitutionally exercise jurisdiction over a party lacking sufficient minimum contacts with the forum. Indeed, this Court and all courts in the United States seek to enforce the rule of law—the bedrock of our democracy. This Court abides by its charge to seek just and constitutional results, in spite of KGL's irresponsible participation in this process. The Court necessarily takes no position on which courts, in the United States or abroad, might have jurisdiction over KGL, or on what the ultimate resolution of this case would be in an appropriate forum.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that KGL's Motion to Vacate Default Judgment [40] is **GRANTED.** Plaintiffs' Motion for an Order Soliciting a Statement of Interest from the Department of Defense [108] and Plaintiffs' Motion for a Referral of the Case to Mediation [111] are both **DENIED.**

**IT IS HEREBY FURTHER ORDERED** that the Court's judgment against KGL [37] is **VACATED.** This action is hereby **DISMISSED.**